UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDREA FELTS-PARGAS,
NICOLETTE DENNIS, and
BLANCA LOPEZ

   Plaintiffs,

  v.            Civ. No. 12-57 JCH/LFG

ALBUQUERQUE PUBLIC SCHOOLS,

   Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

  This matter comes before the Court on Defendant Albuquerque Public Schools' ("APS's" or "the District's") *Motion for Partial Summary Judgment on Damages* (Doc. 38) and *Motion for Summary Judgment* (Doc. 41).  Plaintiffs are female administrators employed by APS, all of whom served as Principals of various high schools in the District until a large-scale, involuntary reassignment of APS administrators in 2010.  Plaintiffs accuse the District of gender discrimination in violation of Title VII of the U.S. Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), and New Mexico's Human Rights Act, NMSA 1978, § 28-1-7(a), in connection with their reassignments to other schools and, in one case, a lower-ranked position.  In support of the instant motions, APS argues that Plaintiffs either cannot make out prima facie claims for gender discrimination and/or cannot demonstrate that the District's reasons for reassigning them were merely a pretext for its discriminatory conduct; it further contends that, even if Plaintiffs do set forth triable claims, they cannot show damages in the form of lost wages.  The Court having considered the motions, briefs, exhibits, and the relevant law, and being otherwise fully informed, finds that APS's motion should be granted.

## FACTUAL BACKGROUND[1]

**Plaintiffs' Pre-Transfer Positions**

At the commencement of the events in issue, all three Plaintiffs were serving as high school principals within APS.  Their situations were as follows:

### *Plaintiff Andrea Felts-Pargas*

As of the 2009-2010 school year, Plaintiff Andrea Felts-Pargas was Principal of Sierra Alternative High School in APS.  Felts-Pargas had been employed with APS for the previous 13 (thirteen) years, and had occupied her present position for approximately four years.  Pursuant to her 2009-2010 employment contract, Felts-Pargas earned an annual salary of $71,400.00.

### *Plaintiff Nicolette Dennis*

As of the 2009-2010 school year, Plaintiff Nicolette Dennis was Principal of Highland High School in APS.  Dennis had been employed with APS for the previous 27 (twenty-seven) years, and had occupied her present position for four-and-a-half years.  Pursuant to her 2009-2010 employment contract, Dennis earned an annual salary of $82, 416,05.

### *Plaintiff Blanca Lopez*

As of the 2009-2010 school year, Plaintiff Blanca Lopez served as Principal of West Mesa High School in APS.  Lopez had been employed with APS for the previous 18 (eighteen) years, and had occupied her present position for five years.  Pursuant to her 2009-2010 employment contract, Lopez earned an annual salary of $81,600.00.

---

[1]Many of the  proposed facts asserted by Plaintiffs are statistics relating to APS' reassignment of 28 school administrators in Summer 2010.  *See* Doc. 42 at 8-10.  Plaintiffs' statistical evidence is not later offered in support of their existing claims as pled in their Amended Complaint.  The Court considers only those facts which are plainly relevant to the determination of whether a genuine dispute exists as to the claims in issue.

**APS' Right of Reassignment Under Plaintiffs' Employment Contracts**

Plaintiffs were employed pursuant to fixed-term employment contracts for the 2009-2010 academic year. These contracts provided that Plaintiffs were employed "for a term of the fiscal year for the Albuquerque Municipal School District[.]" (Doc. 50 at 3).

Paragraph 1 of each Plaintiff's contract stated that the APS Board "may, in its sole discretion, transfer Employee to a different position within the District at any time during the term of this contract," provided that the employee's salary would remain the same for the duration of the contract. *Id.*

Paragraph 10 of each Plaintiff's contract stated that the contract "constitute[d] the entire understanding and agreement between Board and Employee with regard to all matters herein," that the contract "supersede[d] all agreements previously made between the parties relating to this subject matter," and that there were "no other understandings or agreements." *Id.*

**APS' Large-Scale Reassignment and Appointment Process**

It is undisputed that, since APS Superintendent Winston Brooks assumed his tenure, open positions for administrators have been filled by appointment at least half the time. This is in keeping with Brooks' personal philosophy that he should have a major hand" in making personnel decisions involving principals. Under the appointment process, Brooks typically hears a recommendation on a particular placement from the APS Associate Superintendents designated to that educational level – including Associate Superintendent of High Schools Eddie Soto and Associate Superintendent of Middle Schools Ruby Ethridge -- and then decides whether or not to approve the recommendation. It is undisputed that Brooks has the authority to appoint an administrator without the input of his associate superintendents.     In the Spring of 2010, APS undertook a large-scale reassignment of principals and assistant principals. This reassignment

affected nearly 30 administrators, including Plaintiffs.  Brooks was in authority at the time of the reassignment.

During the 2010 reassignment process, Associate Superintendent of High Schools Soto met several times with Associate Superintendent of Middle Schools Ethridge, Associate Superintendent of Elementary Schools Raquel Reedy, Associate Superintendent of Elementary Schools Diane Kershen, Executive Director of Human Resources Andrea Trybus and, on occasion, Chief Academic Officer Linda Sink, to discuss administrators designated as candidates for reassignment.  At these meetings, the associate superintendent who served as immediate supervisor to a prospective transferee would discuss the candidate's performance history; the group would then discuss whether a candidate would be a good fit for a particular school's culture.  The group did not, however, review candidates' resumes or their written performance evaluations.  While it is undisputed that Associate Superintendent Soto thus received input from the rest of the group at these meetings, Superintendent Brooks testified that the only outside opinion he relied on in placing high school principals in new positions was Soto's.

It is undisputed that current APS policy provides the Superintendent with the authority to transfer principals at his discretion.[2]  The parties do not set forth whether these policies were in place at the time of the large-scale reassignment in 2010.

---

[2]*See* http://www.aps.edu/about-us/policies-and-procedural-directives/policies-and-procedural-directives/policies at Policy C.01 "Superintendent's Authority and Responsibility" (providing that superintendent "has the authority . . . to employ, fix salaries of, assign, terminate or discharge all employees of the school district, according to New Mexico State Statutes"); Policy GC.1 "Salary Maintenance (Save Harmless)" (providing that employee's salary under a given contract may not be reduced following a transfer in three circumstances, one of which is "when the superintendent determines that [an employee's] transfer is in the best interest of the district").

**APS' Former Policy**

Plaintiffs contend that, prior to Brooks becoming Superintendent, applications for open positions were reviewed by committee ("the committee selection process"), and that APS Human Resources would provide applicants with the written guidelines used in making the selections.

**Felts-Pargas' Reassignment by APS**

In June 2010, the campus of Sierra Alternative High School, where Felts-Pargas served as Principal, was shuttered, and the school consolidated with another high school in the district, Freedom Alternative High School, for budgetary reasons.  On a date not set forth by the parties, APS selected the Principal of Freedom Alternative, Vivia Sparkler, to serve as Principal of the combined school over Felts-Pargas.  It is undisputed that Felts-Pargas was not given the opportunity to apply for the position. After learning that she would not be leading the new high school, Felts-Pargas contends that she expressed an interest in being reassigned to the position of Principal of APS' School on Wheels, at some point in April 2010.  The parties dispute whether the position had already been offered to, and accepted by, another candidate, Frank Maestas, at the time Felts-Pargas expressed her interest in it.

On a date not set forth by the parties, Felts-Pargas was reassigned to the position of Assistant Principal of La Cueva High School in APS.  Felts-Pargas testified at her deposition that she earned an annual salary of $71,400 in her new situation in 2010-2011 (compared to the annual salary of $82, 416,05 she earned in her final year at Sierra Alternative).  For the 2012-2013 school year, however, Felts-Pargas' salary was $67,788.

**Dennis' Reassignment by APS**

In June 2010, APS reassigned Dennis from her position of Principal of Highland High School to Principal of the Early College Academy and Career Enrichment Center ("CEC"). Plaintiffs dispute Defendant's suggestion that Dennis was reassigned partly due to ongoing performance problems she experienced at Highland, pointing to a number of positive performance evaluations she received during her tenure there, as well as Associate Superintendent Soto's testimony that she made significant strides in reducing gang- and race-based conflicts between Highland High students.  Plaintiffs do not dispute that Highland High had some of the lowest graduation rates and test scores within APS under Dennis, but contend that these numbers actually improved during her tenure. Plaintiffs further contend that math and reading scores have since dropped considerably under Dennis' successor, Scott Elder.

It is undisputed that, under Dennis, the CEC has been singled out as a top high school program by *U.S. News and World Report.*

Dennis' salary stayed at $82,416.05 for the remainder of the 2009-2010 school year, and for the full 2010-2011 school year.  For the 2012-2013 school year, however, Dennis' salary was $80,499.00.

**Lopez' Reassignment by APS**

In June 2010, APS reassigned Lopez from her position of Principal of West Mesa High School to Principal of Washington Middle School.  Plaintiffs dispute APS' contentions that Lopez was transferred because, *inter alia,* she had knowledge of "Dual Language" programs needed for Washington Middle School and "had a variety of leadership and disciplinary problems while at West Mesa."  (Doc. 40 at 9).  Plaintiffs note that West Mesa also had a need for Lopez' bilingual expertise and that APS's position that it was "overrun with complaints"

about Lopez is supported only by the testimony of Soto.  Plaintiffs further note that Soto's only written feedback to Lopez was provided in 2008, two years before her reassignment, and included the finding that Lopez was making "steady progress" in identified areas of concern.

Lopez was replaced at West Mesa High with a male administrator, Ben Santisetevan, who was elevated from the position of Assistant Principal at Rio Grande High School.

Upon her reassignment, Lopez' salary stayed at $81,600.10 for the remainder of the 2009-2010 school year, and for the full 2010-2011 school year.  For the 2012-2013 school year, Lopez' salary was $75,250.00.

**APS High School Principal Position Opens, Lopez Unsuccessfully Applies**

Within a year of Plaintiffs' transfers, on a date not set forth by the parties, APS posted an opening for principal of Rio Grande High School.  Of the three Plaintiffs, only Lopez applied for the position, though it was ultimately offered to another candidate. Felts-Pargas and Davis both testified at their depositions that, had they applied for and obtained the position, they would have earned higher salaries than in their pre-transfer positions.

**LEGAL STANDARD**

**Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."

7

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 243.


## DISCUSSION

Plaintiffs' two causes of action – for "disparate treatment" gender discrimination under Title VII and the NMHRA – are subject to the same analysis.  *Mitchell v. Zia Park, LLC,* 842 F. Supp. 2d 1316, 1327 (D.N.M. 2012).  Thus, in order for Plaintiffs to prevail on their State or federal claims, they must prove gender discrimination with either direct evidence of APS's discriminatory intent or circumstantial evidence of intentional discrimination.  *Clayton v. Vanguard Car Rental U.S.A., Inc.,* 761 F. Supp. 2d 1210, 1254 (D.N.M. 2010).  Here, Plaintiffs

claim that there is direct evidence that APS – acting through Superintendent Brooks – discriminated against them on the basis of gender.  Further, Plaintiffs contend that, even if the Court finds no direct evidence of discrimination, their claims survive summary judgment under the allocation burdens set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the standard which applies to Title VII and NMHRA claims where evidence of discrimination is circumstantial.  *Id.*  In support of the instant motion, APS contends that Plaintiffs cannot withstand summary judgment under either analysis.

**I.      Whether Direct Evidence of Discrimination Exists**

Plaintiffs point to two pieces of deposition testimony as direct evidence of intentional discrimination on the basis of gender.  First, Plaintiffs point to Associate Superintendent Soto's deposition testimony – upon being asked whether administrator reassignments by APS were neutral with regard to gender – that Superintendent Brooks "is always sort of aware in the back of his mind that he wants to make sure that these things balance out; that it's male versus female and those sorts of things."  (Doc. 42 Ex. C Soto Dep. at 40:16-40:19).  As an example, Soto cited Brooks' appointment of a male principal at Atrisco Heritage Academy High School in APS: "He wanted a male because the team there was almost all female, so he wanted to make sure things balance out."  *Id.*  Next, Plaintiffs point to Brooks' own testimony that, while he could not specifically recall discussing the gender-balance issue at Atrisco with Soto, "it wouldn't be uncharacteristic of me if he [Soto] were to say, 'Well , the three administrators we currently have at Atrisco Heritage are all female,' for me to say, 'Then we need to balance it out by getting a male."  *Id.* Ex. A Brooks Dep. at 86:22-87:1. Plaintiffs contend that the above-quoted testimony is direct evidence that APS "has an unlawful propensity to consider the sex of a candidate when making hiring decisions," from which a reasonable jury could conclude that "Brooks applied

these same discriminatory principles when making the decisions to demote the Plaintiffs in this

case and promote males[3] in their stead."  (Doc. 42 at 12-13).

Defendants respond that the direct evidence standard does not apply to the "stray

remarks" cited by Plaintiffs.  They note that an employer's comments that do not, by themselves,

constitute facial evidence that the employment decision in issue was reached for discriminatory

reasons can only serve as direct evidence where they demonstrate "an existing policy which

itself constitutes discrimination."  (Doc. 52 at 12), quoting *Heim v. State of Utah*, 8 F.3d 1541,

1546 (10th Cir. 1993); *see also McGarry v. Bd. of Cty. Commissioners of the Cty. of Pitkin, State

of Colo.,* 175 F. 3d 1193, 1199 (10th Cir. 1999).  According to Defendants, Plaintiffs cannot show

an existing discriminatory policy because, *inter alia,* even if Brooks took a potential appointee's

gender into consideration in the narrow situation where "an administration was almost all female

or almost all male . . . the consideration would apply equally to men and women," and thus

would not target female administrators for discriminatory treatment.  *Id.* at 12-13 (internal

quotation and marks omitted).

The Court finds that it need not reach the issue of whether Brooks' and Soto's testimony

describes a discriminatory appointment policy because Plaintiffs fail to allege, let alone

demonstrate, that they are victims of the alleged policy.  *See Obermeyer v. Vilsack,* 760 F. Supp.

2d 1232, 1249 (D.N.M. 2010) ("Direct evidence is that which demonstrates a specific link

---

[3]Plaintiffs do not explain how the evidence supports this conclusion with regard to Felts-Pargas.  Plaintiffs themselves set forth evidence that, upon the consolidation of Sierra Alternative High School and Freedom Alternative High School in 2010, Brooks selected the erstwhile Principal of Freedom Alternative, Vivia Sparkler, who is female, to serve as Principal of the new, consolidated school over Felts-Pargas.  *See* Doc. 42 Ex. I (Plaintiffs' chart designated "Administrative Change 2010-2011," noting appointment of Sparkler during large-scale reassignment and her gender).

between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action."); *see also Crowe v. ADT Sec. Servs.*, 649 F.3d 1189, 1194 (10th Cir. 2011) ("where an employee performs an act motivated by discriminatory animus intending to cause an adverse employment decision, the employer will be liable if that act is a proximate cause of the eventual adverse employment decision.").  On the contrary, Plaintiffs set forth evidence that, following her reassignment, Felts-Pargas' former duties were assumed by a female Principal, Vivia Sparkler, *see supra,* n.3; Plaintiffs do not set forth any material facts relating to the gender makeup of the administration at the schools to which Dennis and Lopez were reassigned,[4] nor any facts relating to the genders of the administrators at their former schools.  Accordingly, the Court finds that Plaintiffs fail to proffer any direct evidence of gender discrimination sufficient to assert a triable claim under Title VII and the NMHRA.

II.     **Whether Plaintiffs' Claims Survive Summary Judgment Under** *McDonnell Douglas*

   Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that

---

   [4]While Plaintiffs' response asserts in an aside that "Lopez, who had an all female administrative staff[,] could have been particularly at risk for [Brooks'] type of discriminatory thinking," Plaintiffs do not proffer any evidence in support of this statement.  (Doc. 42 at 13).

11

the defendant's preferred reasons for the allegedly discriminatory actions are merely a pretext

for discrimination.  *See* 411 U.S. 792 (1973).  Here, APS contends that summary judgment

should be granted against Felts-Pargas because she has not established a prima facie case of

gender discrimination, and against Lopez and Dennis because they cannot show that APS'

reasons for reassigning them are pretextual.

A.      **Felts-Pargas Fails to Establish a Prima Facie Case of Discriminatory Demotion**

In order to set forth a prima facie case of discriminatory demotion, a "plaintiff must show

(1) that [s]he was within a protected group, (2) adversely affected by defendant's employment

decision, (3) qualified for the position at issue, and (4) that the job from which [s]he was

demoted was not eliminated."  *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)

(internal citations omitted).  APS claims that Felts-Pargas cannot meet the final prong of the

prima facie test because her position was eliminated when Sierra Alternative High School was

consolidated with Freedom Alternative High School under a single Principal, Vivia Sparkler.

*Id.,* citing *Furr v. Seagate Technology, Inc.*, 82 F. 3d 980, 988 (10th Cir. 1996) (rejecting

argument that plaintiff's position was eliminated where "his photo lab responsibilities were still

performed after his layoff. . . . [T]he test for position elimination is not whether the

responsibilities were still performed, but rather whether the responsibilities still constituted a

single, distinct position.");

Plaintiffs respond, briefly, that Felts-Pargas' position was not eliminated within the

meaning of the prima facie test because a principalship still existed upon the consolidation of

Sierra Alternative and Freedom Alternative: "While it is true the Sierra Alternative High School

campus closed, . . . the new, combined school could have been run under [Felts-Pargas']

leadership."  (Doc. 42 at 14-15).  Plaintiffs do not offer any case law in support of their position.

The Court finds that Felts-Pargas' position was eliminated within the meaning of Tenth

Circuit law.  The record shows that Felts-Pargas' former responsibilities were absorbed by

Sparkler *in addition* to Sparkler's own existing duties as Principal of Freedom Alternative High

School – Felts-Pargas' responsibilities did not, however, "still constitute[] a single, distinct

position" following her reassignment.  *Furr,* 82 F.3d at 988; *see also Ellison v. Sandia Nat'l*

*Labs*., 192 F. Supp. 2d 1240, 1255 (D.N.M. 2002) ("A person is not replaced when another

employee is assigned to perform the plaintiff's duties in addition to other duties . . .") (plaintiff

failed to set forth prima facie discriminatory demotion claim where record showed his former

duties were "parceled to two people" to perform on top of their own existing duties after his

termination) (quotation and brackets omitted); *Glover v. NMC Homecare, Inc.*, 13 Fed. Appx.

896, 904 n.7 (10th Cir. 2001) (noting that, while neither the parties nor the district court analyzed

discriminatory demotion claim under the appropriate standard, plaintiff could not have

established a prima facie case where his position was eliminated upon reorganization of

workplace).

Accordingly, because Felts-Pargas cannot set forth a prima facie case for discriminatory

demotion, the Court finds that summary judgment should be granted to APS on her Title VII and

NMHRA discrimination claims.


**B.     APS' Non-Discriminatory Reasons for Reassigning Dennis and Her Attempt**
**        to Show Pretext**

13

Because it does not dispute that Plaintiffs Dennis and Lopez can establish a prima facie case of discrimination, the burden thus shifts to APS to articulate its legitimate, non-discriminatory reason(s) for having reassigned these Plaintiffs.  APS proffers several facially non-discriminatory reasons why it decided to reassign Dennis from the principalship of Highland High to the principalship of the CEC : (1) Soto's testimony that APS was looking to fill the Principal's position at the CEC with "someone who could nudge a school that needed to be nudged along in [the development of] new ways of thinking about how they . . . had traditionally done their work,"  (Doc. 41Ex. E Soto Dep. at 70:2-70:12) ; (2) Brooks' testimony that Soto, APS board members, and Highland staff had complained about Dennis to him; (3) Dennis' placement on a performance improvement plan in 2009; and, (4) the "stick that broke the camel's back," a federal grant evaluator's informing Brooks that APS might lose a federal School-to-Work grant if the District did not change the leadership at Highland, as Dennis had failed to implement goals required by the grant at the school.  (Doc. 41 at 18).

To defeat this portion of the instant motion, Plaintiffs must set forth evidence from which a reasonable jury could conclude that APS' allegedly nondiscriminatory reasons for reassigning Dennis are pretextual.  See *Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) ("to establish a genuine issue as to pretext, [plaintiff] must demonstrate that [defendant's] proffered non-discriminatory reason is unworthy of belief") (quotation omitted).  Plaintiffs "can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in APS' proffered non-discriminatory reasons for the transfer "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons."  *Id.* at 1065 (internal quotation marks and further citations omitted).

14

Plaintiffs contend that APS' reasons for Dennis' reassignment either rely upon the biased observations of others or are too ambiguous and subjective to justify her transfer.  Plaintiffs note that Brooks admitted at his deposition that he had a negative view of Dennis' performance at Highland that was largely informed by "hearsay criticism," i.e., critical reports about her that he obtained secondhand from her supervisor, Soto, and school staff.  *See* Doc. 42 Ex. A Brooks Dep at 27:11-27:16 (Brooks testifying that "in large part [the criticisms of Dennis' leadership would come from] her immediate supervisor, Mr. Soto," as well as from "teachers, staff members, I should say – I don't know if they were teachers or not – but other people who had made those comments to me," and acknowledging that he could not recall the manner in which he received the negative comments from Highland staff).  Further, Plaintiffs suggest that "Soto's and Brooks' ambiguous statements about [Dennis'] 'scattered' leadership and 'annoying' demeanor are completely subjective.  A reasonable jury could infer that Brooks' discriminatory views cloud his ability to fairly evaluate female administrators, particularly Plaintiffs."  *Id.* at 17-18.[5]

Plaintiffs fail to show a genuine dispute of material fact as to whether APS' proffered reasons for transferring Dennis are pretextual.  Plaintiffs do not appear to challenge Brooks' testimony that he received complaints about Dennis from Highland staff that factored into his decision to transfer her to another school; indeed, they object only to Brooks' relying on "hearsay criticism." However, "[i]t is well-established that [a court's] role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate,

---

[5]Plaintiffs further note that APS' proposed material facts that Highland High School's graduation rates and student test scores were below average and not improving under Dennis is belied by evidence that these numbers generally improved from year to year during her tenure, from 2008-2011.  However, because APS does not, in the argument section of its briefs, proffer any figures relating to student academic performance at Highland as a reason for Dennis' reassignment, the Court does not consider the disputed figures in resolving the instant motion.

nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs."

*Green v. JP Morgan Chase Bank Nat'l Ass'n,* 501 Fed. Appx. 727, 732 (10th Cir. 2012)

(quotation omitted). Here, Plaintiffs challenge only the wisdom of Brooks' relying on the

negative reports of others in making the decision in issue; they do not point to specific evidence

showing that his professed reliance on these reports was unworthy of belief.

Plaintiffs similarly fail to challenge other reasons for Dennis' reassignment proffered by

APS. Indeed, Plaintiffs' argument does not specifically mention Soto's testimony that he placed

Dennis on a performance improvement plan during her time at Highland, let alone argue why it

lacks credence as a reason supporting reassignment. Further, with respect to Brooks' testimony

that a federal grant evaluator demanded Dennis' removal from the principalship at Highland in

light of the school's alleged ongoing failure to meet goals set forth in the grant, Plaintiffs state

only that APS never informed Dennis about the evaluator's demand or "brought to her attention

any deficiencies with regard to the grant." (Doc. 42 at 5). It is unclear whether Plaintiffs mean

to suggest that a jury could reasonably infer that the demand did not actually occur, or whether

they instead mean to suggest that, because APS did not inform Dennis of the problem before

acting on the evaluator's demand, the decision to reassign her was illegitimate. In either event,

Plaintiffs fail to meet their burden of presenting sufficient specific evidence from which a jury

could conclude that APS' testimonial evidence is unworthy of belief. *See Clifton,* 924 F.2d at

183 (10th Cir. 1993); *West,* U.S. Dist. LEXIS 131626, at *42 ( non-moving party cannot avoid

summary judgment by inviting speculation) (internal quotation and marks omitted)

Accordingly, because Dennis cannot meet the final prong of the *McDonnell Douglas* test

by showing a material dispute as to pretext, the Court finds that summary judgment should be

granted to APS on her Title VII and NMHRA discrimination claims.

**C.**      **APS' Non-Discriminatory Reasons for Reassigning Lopez and Her Attempt to Show Pretext**

APS proffers the following facially non-discriminatory reasons for reassigning Lopez from the principalship of West Mesa High to the principalship of Washington Middle School: (1) Lopez' fluency in Spanish, which would enable her to understand the "Dual Language Programs" at Washington Middle, a school with "a lot of non-English-speaking students," (Doc. 41 at 19); (2) demographic similarities between West Mesa and Washington, namely the high poverty rate and language issues among many in the student population; (3) low graduation rates and lack of improvement on standardized tests at West Mesa; (4) "staff morale issues" at West Mesa, which, according to Soto, prompted a number of staff members to complain to him about Lopez' leadership, which in turn led Soto to place two disciplinary memos in her personnel file; and (5) Lopez' placement by Soto on an improvement plan, on a date not set forth by APS.

In their response, Plaintiffs address, in a general fashion, only Lopez' "alleged performance issues." (Doc. 42 at 16). Plaintiffs contend that APS' professed dissatisfaction with Lopez' performance at West Mesa lacks credence when an October 24, 2008 memorandum she received from Soto noted that she had made "steady progress" in "sustain[ing] effective communication systems linking staff, parents, and in "promot[ing' a positive school culture," the two areas for which she was previously placed on an improvement plan. (Doc. 42 Ex. L).

APS argues, without citing any case law, that because "Plaintiffs' pretext argument . . . ignores Soto's testimony that the primary reason for recommending Lopez' transfer was her unique suitability for the job at Washington Middle School" – that is, her bilingual ability and experience in working with economically-disadvantaged students – Plaintiffs "effectively concede" that these reasons were not pretextual. (Doc. 52 at 15). This is not entirely true. "As a

17

general rule, an employee must proffer evidence that shows *each* of the employer's justifications are pretextual."  *Tyler v. RE/MAX Mt. States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) (emphasis added); *see also Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1310 (10ᵗʰ Cir. 2005) (plaintiff's "[d]ebunking one of the employer's explanations" is sufficient to survive summary judgment only if employer "has offered no other reason that, if that reason stood alone . . . would have caused" employer to take the challenged action).  The Tenth Circuit has held, however, that a plaintiff does not have to disprove every proffered reason for an employer's adverse action when one of the following circumstances is present: (1) when the proffered reasons are "so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid;" (2) when one explanation is especially "fishy and suspicious" so that it lacks credibility; (3) when the plaintiff raises a substantial doubt as to many of the employer's reasons; (4) when the plaintiff discredits the objective reasons leaving only subjective proffered reasons; or (5) when the employer has changed reasons for the plaintiff's termination, raising doubt as to the employer's honesty.  *See Jaramillo,* 427 F.3d at 1310.

Here, Plaintiffs do not argue, let alone demonstrate, that any of the exceptions set forth in *Jaramillo* apply.  Indeed, while Plaintiffs imply that Soto's 2008 memorandum debunks any possibility that performance played a role in Lopez' transfer, the Court finds that the existence of a single positive memorandum is not, in and of itself, sufficient to show that APS' citing performance issues as a reason for reassigning Lopez a full two years later is so "fishy and suspicious" as to render all of its proffered reasons unworthy of belief.

Accordingly, because Lopez cannot meet the final prong of the *McDonnell Douglas* test by showing a material dispute as to pretext, the Court finds that summary judgment should be granted to APS on her Title VII and NMHRA discrimination claims.

**III.     Plaintiffs' Attempt to Plead a "Disparate Impact" Claim in Their Response**

Finally, Plaintiffs assert a Title VII claim for "disparate impact" gender discrimination for the first time in their answering brief.  Plaintiff's "disparate impact" claim is not listed as a cause of action in their Amended Complaint, nor does the Amended Complaint reference the relevant section of the statute, 42 U.S.C. § 2000e-2(k), or set forth the elements of a "disparate impact" discrimination claim.  *See* Doc. 3 Amended Cplt. ¶¶ 108-118.  Moreover, Plaintiffs have not sought leave of Court to further amend their Amended Complaint, and the discovery period has closed.

In support of their new claim, Plaintiffs proffer what they characterize as a statistical analysis demonstrating that the appointment process adopted by Superintendent Brooks at APS is undertaken "in a discriminatory fashion" and has caused a disparate impact on female administrators.  (Doc. 42 at 19).  Significantly, Plaintiffs do not cite to their proffered statistical evidence in defending either their existing Title VII "disparate treatment" or NMHRA claims from summary judgment.  *See Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 186, 1193 (10th Cir. 2006) (plaintiff may offer statistics as evidence of pretext for purposes of Title VII "disparate treatment" claim, where statistical evidence is "focus[ed] on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.").

APS argues that Plaintiffs' "disparate impact" claim should be dismissed because, *inter alia,* it was "not clearly stated in the Complaint."  (Doc. 52 at 18).  The Court agrees, and follows Tenth Circuit precedent in declining to consider a claim that does not appear in the Amended Complaint.  *See, e.g., McGhee v. Biamont,* 348 Fed. Appx. 418, 420 (10th Cir. 2009); *Stump v. Gates,* 211 F.3d 527, 533 (10th Cir. 2000).

19

**IV.**     **APS' Motion for Partial Summary Judgment on Damages**

Because the Court finds that APS is entitled to summary judgment on the merits of Plaintiffs' claims, it need not reach the arguments raised in its additional *Motion for Partial Summary Judgment on Damages* (Doc. 38), which contends that Plaintiffs' employment pursuant to one-year contracts, which ran their full course, rendered them ineligible for lost wages upon their transfer to lower-salaried positions.

## **CONCLUSION**

Therefore, for the reasons set forth above, the Court finds that APS' *Motion for Partial Summary Judgment on Damages* (Doc. 38) and *Motion for Summary Judgment* (Doc. 41) are **GRANTED.**

UNITED STATES DISTRICT COURT